# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHELE DIANE RENEAU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-144-RAW-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Michele Diane Reneau requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge (ALJ) erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born October 11, 1955, and was fifty-eight years old at the time of the administrative hearing (Tr. 47). She completed high school and one year of college, and has previously worked as an accounting clerk and a cashier (Tr. 19, 274). The claimant alleges that she has been unable to work since April 25, 2011, due to post neuropathy, scoliosis, emphysema, and high blood pressure (Tr. 274).

### Procedural History

On May 27, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, then on December 22, 2011 applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 30, 2014 (Tr. 10-21). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform the full range of medium work as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c), *i. e.*, she could lift/carry fifty pounds occasionally and twenty-five pounds frequently, and

stand/walk/sit six hours in an eight-hour workday, but needed to avoid concentrated exposure to such things as dust or fume (work in an environment like found in an ordinary, non-smoking law office) (Tr. 14). The ALJ then concluded that the claimant was not disabled because she could return to her past relevant work as an accounting clerk or cashier, or alternatively, that there was work in the regional and national economy that she could perform, *i. e.*, the medium jobs of dietary aide and janitor (Tr. 19-20).

**Review**

The claimant contends that the ALJ erred by failing to properly evaluate the opinion of her chiropractor, Dr. Elaine Clinton, D.C. Because the ALJ failed to properly analyze Dr. Clinton's opinion, the decision of the Commissioner should be reversed.

The ALJ found that the claimant had the severe impairments of scoliosis and chronic obstructive pulmonary disease (COPD) (Tr. 12). The relevant medical evidence related to the claimant's physical impairments reveals that the claimant received regular treatment with a nurse practitioner and at a spinal clinic. Records from both reflect the claimant frequently complained of neck and back pain but did not have a limitation on her range of motion (Tr. 308-341, 360-363, 408-409, 450-460).

On March 29, 2012, the claimant underwent a consultative examination with Dr. Jerry Patton, D.O. Upon a history and exam, Dr. Patton noted that the claimant had normal reflexes and good grip strength and good range of motion, could walk heel/toe without difficulty, and had a normal gait with normal speed. His impression was that the claimant had a history of post herpetic neuralgia, history COPD with medications, mild

scoliosis, and hypertension (Tr. 374-375). His lumbosacral spine assessment sheet indicated a positive for mild scoliosis, and positive for mild pain in flexion and extension (Tr. 378).

On May 24, 2012, the claimant's chiropractor, Dr. Elaine Clinton, drafted a letter indicating that the claimant had been in her care for four months for chronic thoracic pain/post-herpetic neuralgia and neck pain and headaches, and that she had responded favorably to treatment but continued to have symptoms (Tr. 413). Dr. Clinton stated that, based on the claimant's history, examination, and response to treatment, the claimant would be unable to consistently perform work-related activities that include prolonged standing, walking, lifting, or carrying; and that prolonged sitting without activity would exacerbate her symptoms (Tr. 413). She indicated that hearing, speaking, and mental activities were outside her scope of practice (Tr. 413). Dr. Clinton's treatment notes reflect diagnoses of cervical segmental dysfunction and moderate to severe myofasciitis complicated by cervical degeneration, with a guarded prognosis (Tr. 423).

On May 30, 2012, an electrophysiologic study returned an abnormal result characterized primarily by a demyelinating neuropathy affecting both motor and sensory nerves, although the entire study could not be completed due to the claimant's fear of needles (Tr. 430).

On September 18, 2012, state reviewing physician Nancy Armstrong, M.D., completed a physical RFC assessment and found the claimant could perform medium work but needed to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 483-486).

A year later, Dr. Andrew Gin examined the claimant but was unable to "put a unified picture" together, noting there was "a concern of hypertension in relationship to the possible lung scarring versus a mass, versus demyelinating neuropathy," but stated he did not believe her symptoms were suggestive of multiple sclerosis or ALS (Tr. 511).

On February 26, 2014, Dr. Clinton completed a Medical Assessment of the claimant's ability to do work-related physical activities (Tr. 548-550). She indicated that the claimant could sit/stand/walk for fifteen minutes at a time each, and up to two hours each per eight-hour workday, noting that changing positions helped to relieve the claimant's pain (Tr. 548). Additionally, she stated that the claimant would need to lie down two to three hours a day for an hour at a time, could only occasionally lift/carry up to nineteen pound, and frequently lift/carry up to ten pounds (Tr. 548-549). Additionally, she indicated that the claimant could frequently reach, occasionally bend and squat, and not at all crawl or climb, nor could she undergo exposure to marked changes in temperature and humidity or exposure to dust, fumes, and gases (Tr. 550). Her remarks indicated that the claimant's congenital scoliosis contributed to her musculoskeletal complaints, and that treatment with her was strictly for pain management and that she had recommended additional imaging but the claimant could not afford it (Tr. 550). She stated that these limitations had existed "prior to February 2012" (Tr. 550).

In his written opinion, the ALJ summarized the claimant's testimony and her medical records (Tr. 15-18). He then stated he had found the claimant not credible, and that he had afforded significant weight to the opinions of the state reviewing physicians (Tr. 19). He provided no analysis of any other medical opinion in the record.

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

Here, the ALJ recited Dr. Clinton's opinion but did not acknowledge her findings, did not provide any analysis regarding her opinion, and further failed to disclose what weight he afforded her opinion. This was important to do because Dr. Clinton's treatment notes reflect impairments not accounted for in the RFC. Nevertheless, he rejected (by failing to discuss) some of the limitations applicable to the claimant, *e. g.*, her need to change positions due to her physical impairments, and restrictions on sitting/standing/walking as well as the lifting/carrying restrictions, but he did not provide

any explanation for such rejection. *See, e. g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) *and Hamlin*, 365 F.3d at 1219. *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted]. This was a significant omission in that it calls into question the claimant's ability to perform medium work, which by definition "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds," 20 C.F.R. §§ 404.1567(c), 416.967(c), and because the ALJ failed to address the issue of possible postural and/or manipulative limitations, lifting restrictions, and the issue of whether she would need some type of sit/stand option. "[T]he ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013), *quoting* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

In any event, it was clearly error for the ALJ to reject without explanation parts of the opinion while finding other parts consistent with the RFC. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e]

report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]. The Commissioner has proffered a number of arguments in support of the ALJ's medium RFC assessment, but the undersigned Magistrate Judge declines to assess these *post hoc* rationales. S*ee Haga v. Astrue*, 482 F.3d 1205, 1207-1208 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted]. The undersigned Magistrate Judge further finds that the ALJ's statement that he had "carefully reviewed and considered all of the medical evidence of record" is not sufficient where, as here, the opinion reflects that he did not. *See Barnes v. Colvin*, 2015 WL 5827687, at *5 (N.D. Okla. Oct. 6, 2015) (slip op) ("The Tenth Circuit has stated that it will take the ALJ at his work *when the entirety of the ALJ's discussion of the evidence and the reasons for his conclusions* demonstrate that he adequately considered the claimant's impairments.") (emphasis added), *citing Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009).

Because the ALJ failed to properly evaluate Dr. Clinton's opinion, the decision of the Commissioner should be reversed and the case remanded for further analysis by the ALJ. If this results in adjustments to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is

therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**